UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ESTATE OF D.B., by Administrator
AMY BRIGGS,

                              Plaintiff,

v.                                                                      Case No. 7:15-CV-0484 (GTS/ATB)

THOUSAND ISLANDS CENT. SCH. DIST.;
THOUSAND ISLANDS CENT. SCH. DIST.
BD. OF EDUC.; FRANK HOUSE, Superintendent,
JOHN P. WARNEK, President of Bd. of Educ.; and
JOSEPH GILFUS, Principal,

                              Defendants.
_____

APPEARANCES:                                              OF COUNSEL:

METH LAW OFFICES, P.C.                              MICHAEL D. METH, ESQ.
   Counsel for Plaintiff
10 Moffatt Lane, Suite 2
P.O. Box 560
Chester, NY 10918

LAW FIRM OF FRANK W. MILLER                 CHARLES C. SPAGNOLI, ESQ.
   Counsel for Defendants                               FRANK W. MILLER, ESQ.
6575 Kirkville Road
East Syracuse, NY 13057

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this civil rights action filed by Administrator Amy Briggs

("Plaintiff") on behalf of the estate of D.B. (a student with a disability) against the Thousand

Islands Central School District ("the District") and various of its officials (together,

"Defendants") pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504"), Title II

of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1983, the Fourteenth Amendment,

the Individuals with Disabilities Education Act ("IDEA"), New York State Education Law §§ 12 and 81, and the Dignity for All Students Act ("DASA"), is Defendants' motion to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction and failure to state a claim (Dkt. No. 11), and Plaintiff's cross-motion to amend her Complaint (Dkt. No. 15). For the reasons set forth below, Defendants' motion is denied, and Plaintiff's cross-motion is granted in part and denied in part.

## I.  RELEVANT BACKGROUND

### A.  Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint asserts eight causes of action. (Dkt. No. 1 [Pl.'s Compl.].) First, Plaintiff claims that Defendants Thousand Island Central School District ("TICSD"), Frank House, John P. Warneck and Joseph Gilfus violated Section 504 of the Rehabilitation Act and Title II of the ADA. (*Id.* at ¶¶ 169-76.)

Second, Plaintiff claims that TICSD, the Board of Education, Frank House, John P. Warneck and Joseph Gilfus violated 42 U.S.C. § 1983 and the Fourteenth Amendment through their deliberate indifference to students' harassment of D.B. (*Id.* at ¶¶ 177-93.)

Third, Plaintiff claims that TICSD, the Board of Education, Frank House, John P. Warneck, and Joseph Gilfus violated the IDEA. (*Id.* at ¶¶ 194-97.)

Fourth, Plaintiff claims that TICSD, the Board of Education, Frank House, John P. Warneck, and Joseph Gilfus violated N.Y. Education Law § 12 and DASA. (*Id.* at ¶¶ 198-201.)

Fifth, Plaintiff claims that TICSD, the Board of Education, Frank House, John P. Warneck, and Joseph Gilfus violated N.Y. Education Law § 801-a. (*Id.* at ¶¶ 202-06.)

Sixth, Plaintiff claims that TICSD and the Board of Education are liable for negligent supervision. (*Id.* at ¶¶ 207-13.)

Seventh, Plaintiff claims that TICSD, the Board of Education, Frank House, John P. Warneck, and Joseph Gilfus are liable for intentional infliction of emotional distress ("IIED"). (*Id.* at ¶¶ 214-19.)

Eighth, and finally, Plaintiff claims that TICSD, the Board of Education, Frank House, John P. Warneck, and Joseph Gilfus are liable for negligent infliction of emotional distress ("NIED"). (*Id.* at ¶¶ 220-26.)

### B.     Parties' Briefing on Defendants' Motion to Dismiss

#### 1.     Defendants' Arguments

Generally, Defendants move to dismiss Plaintiff's Complaint for five reasons. (Dkt. No. 11, Attach. 2 [Defs.' Mem. of Law].) First, Defendants move to dismiss Plaintiff's federal claims for lack of subject-matter jurisdiction, because Plaintiff has failed to exhaust her administrative remedies with regard to those claims. (*Id.* at 3.) The federal claims consist of the first three causes of action listed above in Part I.A. of this Decision and Order.

Second, Defendants move to dismiss Plaintiff's state claims for lack of supplemental jurisdiction, because of the Court's dismissal of her federal claims. (*Id.* at 6.) The state claims consist of the remaining causes of action listed above in Part I.A. of this Decision and Order.

Third, Defendants move to dismiss all claims to the extent that they involve acts occurring before April 20, 2012, because the statute of limitations governing those claims has run. (*Id.* at 7.)

Fourth, Defendants move to dismiss the claims asserted under DASA, N.Y. Educ. Law § 12, and N.Y. Educ. Law 801-a, because those statutes do not allow a private cause of action. (*Id.* at 8.)

Fifth, and finally, Defendants move to dismiss Plaintiff's claims of negligent supervision, IIED, and NIED for failure to state a claim upon which relief can be granted. (*Id.* at 10-13.)

### 2. Plaintiff's Response

Generally, Plaintiff opposes Defendants' motion to dismiss for two reasons. (Dkt. No. 15, Attach. 3 [Pl.'s Opp'n Mem. of Law].) First, Plaintiff argues that the Court has subject-matter jurisdiction over her federal claims, because (a) it would have been futile for her to have tried to exhaust her administrative remedies with regard to those claims, and (b) her federal claims, which are based on misconduct by Defendants that continued until D.B.'s suicide, are timely. (*Id.* at 4-9.)

Second, Plaintiff argues that her Complaint states claims for relief for negligent supervision and NIED under state law. (*Id.* at 10.)

### 3. Defendants' Reply

Generally, in reply to Plaintiff's response, Defendants assert two arguments. (Dkt. No. 16 [Defs.' Reply Mem. of Law].) First, Defendants argue that D.B.'s suicide does not retroactively make timely Plaintiff's resort to the idea that her exhaustion of administrative remedies would have been "futile." (*Id*. at 2-9.)

Second, Defendants argue that Plaintiff misconstrues Defendants' argument regarding her claim of NIED. (*Id*. at 18-19.)

### C. Parties' Briefing on Plaintiff's Cross-Motion to Amend

### 1. Plaintiff's Arguments

As part of her response to Defendants' motion to dismiss, Plaintiff has filed a cross-motion for leave to amend her Complaint. (Dkt. No. 15, at 12-17 [Pl.'s Opp'n Mem. of Law].) Plaintiff's affirmation in support of her cross-motion explains that she intends to amend her

Complaint "to assert gender discrimination claims under Title IX, 42 U.S.C. § 1983 and New York Civil Rights Law §§ 40-c and 40-d." (Dkt. No. 15, Attach. 1, at 1 [Pl.'s Affirm.].)  In addition, Plaintiff seeks to withdraw four claims that were present in her original Complaint: (1) her DASA claim; (2) her claim under N.Y. Educ. Law § 12; (3) her claim under N.Y. Educ. Law § 801-a; and (4) her IDEA claim.  (Dkt. No. 15, Attach. 2 [Proposed Am. Compl.].)

More specifically, Plaintiff's proposed Amended Complaint asserts eleven causes of action. (*Id*.)  First, Plaintiff claims that TICSD and the Board of Education violated Section 504 of the Rehabilitation Act.  (*Id*. at ¶¶ 169-76.)  Plaintiff's proposed Amended Complaint therefore removes Frank House, John P. Warneck, and Joseph Gilfus from the § 504 cause of action, and adds the Board of Education.

Second, Plaintiff claims that Defendants TICSD, Frank House, John P. Warneck, and Joseph Gilfus violated Title II of the ADA.  (*Id*. at ¶¶ 177-84.)  This cause of action appears in Plaintiff's original Complaint, but has been separated from the first cause of action and amended to include additional facts.  (*Id*. at ¶¶ 180-83.)

Third, Plaintiff claims that TICSD, the Board of Education, Frank House, John P. Warneck, and Joseph Gilfus violated 42 U.S.C. § 1983 and the Fourteenth Amendment for discrimination involving D.B.'s disability.  (*Id*. at ¶¶ 185-92.)  This cause of action has also been amended to include additional facts.  (*Id*. at ¶¶ 186-91.)

Fourth, Plaintiff claims that TICSD, the Board of Education, Frank House, John P. Warneck, and Joseph Gilfus violated 42 U.S.C. § 1983 and the Fourteenth Amendment for discrimination involving D.B.'s actual or perceived sexual orientation.  (*Id*. at ¶¶ 193-201.)  This cause of action appears for the first time in the proposed Amended Complaint.

Fifth, Plaintiff claims that TICSD, the Board of Education, Frank House, John P. Warneck, and Joseph Gilfus violated 42 U.S.C. § 1983 and the Fourteenth Amendment for discrimination involving D.B.'s sex. (*Id.* at ¶¶ 202-10.) This cause of action appears for the first time in the proposed Amended Complaint.

Sixth, Plaintiff claims that TICSD and the Board of Education violated Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et. seq., for discrimination based on D.B.'s sex. (*Id.* at ¶¶ 211-17.) This cause of action appears for the first time in the proposed Amended Complaint.

Seventh, Plaintiff claims that TICSD, the Board of Education, Frank House, John P. Warneck, and Joseph Gilfus violated New York Civil Rights Law §§ 40-c and 40-d, for discrimination based on D.B.'s actual or perceived sexual orientation. (*Id.* at ¶¶ 218-24.) This cause of action appears for the first time in the proposed Amended Complaint.

Eighth, Plaintiff claims that TICSD, the Board of Education, Frank House, John P. Warneck, and Joseph Gilfus violated New York Civil Rights Law §§ 40-c and 40-d, for discrimination based on D.B.'s sex. (*Id.* at ¶¶ 225-31.) This cause of action appears for the first time in the proposed Amended Complaint.

Ninth, Plaintiff claims that TICSD and the Board of education are liable for negligent supervision. (*Id.* at ¶¶ 232-38.) This cause of action is unchanged from the original Complaint.

Tenth, Plaintiff claims that TICSD, the Board of Education, Frank House, John P. Warneck, and Joseph Gilfus are liable for IIED. (*Id.* at ¶¶ 239-44.) This cause of action is unchanged from the original Complaint.

Eleventh, and finally, Plaintiff claims that TICSD, the Board of Education, Frank House, John P. Warneck, and Joseph Gilfus are liable for NIED. (*Id.* at ¶¶ 245-51.) This cause of action is unchanged from the original Complaint.

### 2. Defendants' Response

Generally, Defendants oppose Plaintiff's cross-motion to amend her Complaint for two reasons. (Dkt. No. 16 [Defs.' Reply Mem. of Law].) First, Defendants argue that Plaintiff's request should have been made as an independent motion, and not a cross-motion. (*Id.* at 9.) Second, Defendants argue that the amendment is futile to the extent that (1) it seeks to add untimely claims under N.Y. Civil Rights Law §§ 40-c and 40-d, (2) it seeks to add claims of a hostile education environment due to gender-based harrassment, and (3) it seeks to preserve Plaintiff's IIED claim, which (Defendants argue) was expressly withdrawn. (*Id.* at 11-18.)

### 3. Defendants' Supplemental Response

As indicated above, one of Defendants' objections to Plaintiff's cross-motion is that offering a motion to amend as a cross-motion deprives them of a full and fair opportunity to be heard on the issue, due to page number constraints on their reply/opposition memorandum of law. (*Id.* at 10.) As a result, out of an abundance of caution, the Court issued a Text Order on January 21, 2016, allowing Defendants a reasonable opportunity to supplement their reply/opposition memorandum of law, to cure any prejudice to them. (Dkt. No. 18.)

Generally, in their supplemental papers, Defendants assert seven arguments against allowing the proposed Amended Complaint. (Dkt. No. 19 [Defs.' Suppl. Reply/Opp'n Mem. of Law].) First, Defendants argue that the proposed amendments are futile to the extent that they fail to state a claim under 42 U.S.C. § 1983 for gender and sexual-orientation discrimination

against the School District and the Board of Education. (*Id*. at 1.) Second, Defendants argue that the proposed amendments are futile to the extent that they fail to state a claim based on gender discrimination. (*Id.* at 5.)

Third, Defendants argue that the proposed amendments are futile to the extent that they fail to state Section 1983 claims against Defendants House and Warneck. (*Id.* at 6.)

Fourth, Defendants argue that the proposed amendments are futile with regard to N.Y. Civil Rights Law §§ 40-c and 40-d because those claims were not set out in a timely notice of claim. (*Id.* at 7.)

Fifth, Defendants argue that the claims against the individual Defendants in their official capacities are futile. (*Id.* at 8.)

Sixth, Defendants argue that the proposed amendments are futile to the extent that they fail to state a claim based on sexual orientation discrimination. (*Id.* at 9.)

Seventh, and finally, Defendants argue that the proposed amendments are futile to the extent that they request unavailable punitive damages against a municipality. (*Id.*)

## II.    GENERAL LEGAL STANDARDS

Because the parties have (in their memoranda of law) demonstrated an adequate understanding of the legal standards governing their motions, Plaintiffs' claims and the doctrine and theories asserted by both parties, the Court will not recite those legal standards in this Decision and Order, which is intended primarily for the review of the parties.

## III.    ANALYSIS

### A.    Exhaustion of Administrative Remedies

As explained above, generally, Defendants move to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction because Plaintiff did not exhaust her administrative remedies

before filing suit; and, in response, Plaintiff argues that exhaustion should be excused as futile because D.B. committed suicide and therefore Plaintiff cannot receive adequate remedies from the administrative process. (Dkt. No. 11, Attach. 2, at 3-6; Dkt. No. 15 Attach. 3, at 4-9.) After careful consideration, the Court denies Defendants' motion for the reasons stated by Plaintiff. To those reasons, the Court adds the following analysis.

"It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court." *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004.) It is irrelevant to this point of law that Plaintiff's Amended Complaint seeks to withdraw her IDEA claim, because "potential plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act)." *Polera v. Bd. of Educ. of Newburgh*, 288 F.3d 478, 481 (2d Cir. 2002); 20 U.S.C. § 1415(l) ("Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under . . . other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].").

If a plaintiff has failed to meet the exhaustion requirement, the district court does not have subject-matter jurisdiction over the action. *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (citing *Polera*, 288 F.3d at 483 and *Hope v. Cortines*, 69 F.3d 687, 688 [2d Cir. 1995]). However, exhaustion may be excused if it would have been futile. *Polera*,

288 F.3d at 488. "To show futility, a plaintiff must demonstrate that adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process." *Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 205 (2d Cir. 2007) (internal quotation marks omitted).

If a plaintiff can demonstrate that there is no relief available to her through the administrative process, then exhaustion is futile. *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 790 (2d Cir. 2002). "Relief available" is defined as "relief for the events, conditions, or consequences of which the person complains, [even if] not necessarily relief of the kind the person prefers." *Taylor*, 313 F.3d at 790 (quoting *Polera*, 288 F.3d at 488). Pursuant to this rule, a plaintiff cannot avoid the exhaustion requirement by merely adding a request for money damages–which are unavailable under the IDEA. *Polera*, 288 F.3d at 488-91. In such a case, an "adequate remedy" is still available through the administrative process, even if such a remedy is not the same remedy sought in the complaint. *Id.* at 490.

In opposition to Plaintiff's argument that exhaustion was futile because D.B. committed suicide, Defendants analogize the facts of this case to those of *Polera,* and argue that administrative remedies were available "at the time of the alleged wrongdoing." (Dkt. No. 16, at 5.) In so doing, Defendants argue that D.B.'s suicide is not the wrongdoing alleged, asserting, "By its very definition, suicide is a self-regarding act, not an act committed by one entity upon another. The Defendants did not 'suicide' D.B. He committed suicide upon his own person." (Dkt. No. 16, at 6.) With due respect to Defendants, this argument ignores the language of *Polera*. "Relief available" for the purposes of futility "means 'relief for the events, condition, *or consequences* of which the person complains[.]'" *Polera*, 288 F.3d at 490 (quoting *Charlie F. v.*

*Board of Educ.*, 98 F.3d 989, 992 [7th Cir. 1996]) (emphasis added). Taking the facts in the Complaint as true, D.B.'s suicide is the consequence of which Plaintiff complains, and there could be no relief available until after he committed suicide (at which time the administrative process could remedy nothing).

Defendants also argue that the Court must dismiss Plaintiff's Complaint because to not do so would render the IDEA "meaningless, and easily circumvented." (Dkt. No. 16, at 5.) Defendants imply that Plaintiff is in the same position as the plaintiff was in *Polera*. The Court distinguishes the facts of this case from those of *Polera*. The plaintiff in *Polera* was a visually impaired student who had waited until her senior year of high school to sue the school for failing to provide her with accommodations while she was enrolled. *Polera*, 288 F.3d at 480. She had not pursued administrative remedies, and the Second Circuit ruled that resort to administrative remedies had not been futile, explaining that "disabled-student plaintiffs, like Polera, should not be permitted to 'sit on' live claims and spurn the administrative process that could provide the educational services they seek, then later sue for damages." *Id.* at 490.

This case, however, presents facts that do not implicate the same risks implicated in *Polera*. A court finding that suicide renders exhaustion futile cannot fairly be said to encourage parents of bullied children to "sit on" a live claim, wait for their children to commit suicide, and then sue for damages. Simply stated, suicide is not the same as graduation.

Moreover, if the Court were to consider those portions of the proposed Amended Complaint that it permits to be filed in Part III.C. of this Decision and Order, then the Court would find an alternative ground for concluding that exhaustion would have been futile. The Second Circuit has held that, where a natural parent sues on behalf of her disabled child, and that

parent was not aware of the cause of action until after administrative remedies could provide no

adequate relief, exhaustion may be excused. *Taylor*, 313 F.3d at 791. Here, Plaintiff's Amended

Complaint plausibly suggests that the scope of Defendants' alleged failure was not apparent until

after D.B.'s death. For example, the Amended Complaint references a probative text message

retrieved from D.B.'s cell phone after his suicide. (Dkt. No. 15, Attach. 2, at ¶ 132.) Moreover,

additional facts came to light during the police investigation of D.B.'s death that were not known

before he died, such as a statement by D.B.'s friend that Defendant Gilfus had ignored a note

from D.B. reporting bullying incidents (*Id.* at ¶ 136), and the fact that Defendant Gilfus never

turned the note over to the authorities (*Id.*). Families also shared corroborating information

about Defendants' alleged conduct at a school board meeting after D.B.'s death, and an alleged

motive for Defendant Gilfus to deliberately disregard the bullying became apparent: Gilfus was

the coach of the football team upon which the bullies played. (*Id.* at ¶ 137.) Perhaps most

troubling, Plaintiff did not learn until after D.B.'s death that Defendants had allegedly either

destroyed or failed to maintain documentary evidence of prior bullying incidents that had been

reported to the school. (*Id.* at ¶¶ 151-56.) Unlike the Second Circuit in *Polera*, the Court finds

that Plaintiff did not deliberately delay in bringing this action.

Defendants criticize Plaintiff's argument for lack of in-circuit precedent and its reliance

on persuasive, rather than mandatory, authority. (Dkt. No. 16, at 6.) However, it appears that

this particular issue–whether suicide excuses a failure to exhaust administrative remedies under

the IDEA–has never been decided by the Second Circuit. The district courts that have addressed

the issue have found that exhaustion was futile. *Moore v. Chilton Cnty Bd. Of Educ.*, 936 F.

Supp. 2d 1300, 1308 (M.D. Ala. 2013); *Scruggs v. Meriden Bd. Of Educ.*, 03-CV-2224, 2007

U.S. Dist. LEXIS 58517, at *20-22 (D. Conn. 2007); *Taylor v. Altoona Area Sch. Dist.*, 737 F.

Supp. 2d 474, 483 (W.D. Pa. 2010).

Finally, to hold that exhaustion was not futile in these circumstances would appear to

lead to an absurd result. If a child were to attempt suicide and survive, then his parents could

exhaust their administrative remedies and file suit. However, if a child were to attempt suicide

and not survive, then his parents could not exhaust their administrative remedies and file suit.

*See Taylor*, 313 F.3d at 789 (noting parenthetically that administrative remedies can provide

only prospective educational benefits). As a result, parents who lost a child to suicide would

have available to them fewer remedies than parents whose child survived a suicide attempt.

### B.        Supplemental Jurisdiction

As explained above, Defendants move to dismiss Plaintiff's state law claims for lack of

supplemental jurisdiction, based entirely on their argument concerning jurisdiction over the

federal law claims. (Dkt. No. 11, Attach. 2, at 6-7 [Defs.' Mem. of Law].) Because the Court

has determined that it has subject-matter jurisdiction over the federal law claims (*see, supra,* Part

III.A. of this Decisions and Order), the Court denies this aspect of Defendants' motion.

### C.        Cross-Motion to Amend

As explained above, Defendants oppose Plaintiff's cross-motion to amend on a number

of grounds, most notably the ground of futility. (Dkt. Nos. 16, 19.) After careful consideration,

Plaintiff's motion is denied to the extent that the proposed amendments are futile, as argued by

Defendants; however, otherwise Plaintiff's motion is granted. To the futility arguments asserted

by Defendants, the Court adds the following analysis.

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend shall be freely given. Fed. R. Civ. P. 15(a). Notwithstanding this rule, the Court may deny leave if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A proposed amendment is futile if it could not survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim. *Hines v. City of Albany*, 542 F. Supp. 2d 218, 224 (N.D.N.Y. 2008).

### 1. New York Civil Rights Law §§ 40-c and 40-d

Defendants argue that Plaintiff's proposed addition of two claims under N.Y. Civil Rights Law §§ 40-c and 40-d (Dkt. No. 15, Attach. 2, at ¶¶ 218-24) is futile because (1) the claims are untimely, and (2) the claims were not included in a timely notice of claim. (Dkt. No. 16, at 11; Dkt. No. 19, at 7.)

Claims under N.Y. Civil Rights Law §§ 40-c and 40-d must be included in a notice of claim in order to avoid dismissal. *Preston v. Hilton Cent. Sch. Dist.*, 876 F. Supp. 2d 235, 245 (W.D.N.Y. 2012) (citing N.Y. Gen. Mun. Law § 50-e and N.Y. Educ. Law § 3813). "[T]he purpose of section 3813 of the Education Law is to give a school district prompt notice of claims 'so that investigation may be made before it is too late for investigation to be efficient.'" *Parochial Bus Sys., Inc. v. Bd. of Educ. of New York*, 458 N.E.2d 1241, 1244 (N.Y. 1983) (*quoting Matter of Bd. of Educ. [Wager Constr. Corp.]*, 333 N.E.2d 353 [N.Y. 1975]). "Satisfaction of [§ 3813's notice] requirements is a condition precedent to bringing an action against a school district or board of education . . . ." *Parochial Bus Sys., Inc.*, 458 N.E.2d at 1245 (bracketed material added). A notice of claim must disclose the nature of the claim, as well

as when, where, and how the claim arose. *Donlon v. Bd. of Educ. of Greece Cent. Sch. Dist.*, 06-CV-6027, 2007 WL 108470, at *2 (W.D.N.Y. Jan. 12, 2007).

Defendants correctly point out that Plaintiff's proposed claims under §§ 40-c and 40-d are not included in either the original or the amended notice of claim that Plaintiff served on Defendants. (Dkt. No. 19, Attach. 2; Dkt. No. 19, Attach. 4.) Furthermore, the Court lacks the power to allow Plaintiff to serve a new notice of claim, because the statute of limitations has run. *Pierson v. New York*, 56 N.Y.2d 950, 955 (1982); N.Y. Educ. Law § 3813(2-b). Under the circumstances, the claims could not survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, and are therefore futile. As a result, Plaintiff's cross-motion to amend is denied to the extent it seeks to add claims under §§ 40-c and 40-d (in the seventh and eighth causes of action of the proposed Amended Complaint).

### 2. Title IX Claim

Defendants argue that Plaintiff's proposed addition of gender discrimination claims under Title IX (Dkt. No. 15, Attach. 2, at ¶¶ 211-17) is futile for two reasons. First, Defendants argue that Plaintiff has tried to "shoehorn" sexual orientation discrimination into gender discrimination protections. (Dkt. No. 19, at 5 [Defs.' Suppl. Reply/Opp'n Mem. of Law].) Second, Defendants argue that the proposed Amended Complaint does not state a claim of gender discrimination based on gender stereotyping. (*Id.*).

It is settled law that, to survive a Fed. R. Civ. P. 12(b)(6) motion, a complaint must contain more than "mere conclusory statements" to support its causes of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the proposed Amended Complaint includes many references to "gender-related slurs," the slurs alleged in the Amended Complaint do not

plausibly suggest that the bullying was based on D.B.'s gender. For example, Plaintiff alleges, "[Another Student] called the Decedent a 'pussy,' and told him 'You're a pussy and you need the shit kicked out of you.' *These are the types of anti-gay and gender-related slurs Decedent was consistently subjected to*." (Dkt. No. 15, Attach. 2, at ¶ 106 [emphasis added]). As shocking as this slur may be, the Court is not persuaded that it is related to gender under the circumstances. Rather, as Defendants point out, the slur "pussy" is more likely to mean "coward" than anything gender related. (Dkt. No. 15.) Even if the other student did intend the slur to relate to gender, Plaintiff has not made a proper showing of that fact. Rather, most of Plaintiff's references to "gender-related slurs" are nothing more than conclusory statements.

However, Plaintiff's Title IX claim is not based only on gender-related slurs. Plaintiff argues that her Title IX claim is also supported by alleged homophobic slurs that constitute "gender stereotyping." (Dkt. No. 15, Attach. 3, at 13 [Pl.'s Mem. of Law].) Defendants reply that Plaintiff is merely trying to "bootstrap protection for sexual orientation." (Dkt. No. 16, at 16 [Defs.' Reply Mem. of Law, quoting *Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2d Cir. 2005)].)

The Second Circuit recognizes a fine line between gender stereotyping and bootstrapping protection for sexual orientation. Because a Title IX sex discrimination claim is treated in much the same way as a Title VII sex discrimination claim, Title VII jurisprudence therefore applies. *Papelino v. Albany College of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011). Under the "gender stereotyping" theory of liability under Title VII, individuals who fail or refuse to comply with socially accepted gender roles are members of a protected class. *See Dawson*, 398 F.3d at 218. However, courts in the Second Circuit do not recognize sexual orientation as a

protected classification under Title VII or Title IX.  *Tyrrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 622 (E.D.N.Y. 2011).

The critical fact under the circumstances is the actual sexual orientation of the harassed person.  If the harassment consists of homophobic slurs directed at a homosexual, then a gender-stereotyping claim by that individual is improper bootstrapping.  *Dawson*, 398 F.3d at 218.  If, on the other hand, the harassment consists of homophobic slurs directed at a *heterosexual*, then a gender-stereotyping claim by that individual is possible.  *Riccio v. New Haven Bd. of Educ.*, 467 F. Supp. 219, 226 (D. Conn. 2006) (citing *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 82 (1998).

While Plaintiff may have failed to allege facts plausibly suggesting any gender-related slurs, the Complaint and proposed Amended Complaint are replete with allegations of homophobic slurs.  (*See, e.g.*, Dkt. No. 15, Attach. 2, at ¶ 130.)  The question is whether the pleadings alleged facts plausibly suggesting that D.B. was homosexual.  They appear to allege that D.B. was not.  For example, D.B.'s own alleged statements refer to accusations that he was homosexual as "stupid gay rumours [*sic*]."  (*Id.* at ¶ 3.)  Moreover, the Amended Complaint alleges that the bullying was based on D.B.'s "actual *or perceived* sexual orientation" and his "*perceived and/or presumed* sexual orientation."  (*Id.* at ¶¶ 4, 5, 37, 40, 132, 163, & n.1 [emphasis added].)  Under the circumstances, the Amended Complaint alleges facts plausibly suggesting a gender-stereotyping claim to survive a Fed. R. Civ. P. 12(b)(6) motion; and the amendment to include this claim is not futile.  As a result, Plaintiff's cross-motion to amend is granted to as to the inclusion of the Title IX claim (in the sixth cause of action of the proposed Amended Complaint).

17

### 3. Intentional Infliction of Emotional Distress

Defendants argue that the proposed Amended Complaint should not include the claim for IIED, because Plaintiff has explicitly withdrawn that claim. (Dkt. No. 16, at 18.) The statement to which Defendants refer is contained in a footnote in Plaintiff's opposition memorandum of law, and is as follows: "As defendants note, state law prohibits IIED claims against public entities. *Lauer v. City of New York*, 240 A.D.2d 543, 544 (N.Y. App. Div., 2d Dept. 1997). That claim is withdrawn." (Dkt. No. 15, Attach. 3, at 12, n.2.) However, the IIED claim still appears in Plaintiff's proposed Amended Complaint. Because Plaintiff's IIED claim has been expressly withdrawn, it shall be struck from the proposed Amended Complaint. Defendants' motion is therefore granted as to this claim.

### 4. Section 1983 Claims Against Defendants House and Warneck

Defendants argue that the proposed Amended Complaint fails to state a claim under 42 U.S.C. § 1983 against Defendants House and Warneck. (Dkt. No. 19, at 6.) In order to state a claim against individual school administrators under the Equal Protection Clause through a Section 1983 claim, a plaintiff must allege facts plausibly suggesting (a) that those particular defendants had actual knowledge that the misconduct in question (here, bullying) was directed at an individual because of his or her protected status, and (b) that the administrators were deliberately indifferent to the misconduct. *DiStiso v. Cook*, 691 F.3d 226, 229 (2d Cir. 2012). After carefully reviewing the allegations in the proposed Amended Complaint, the Court finds that Plaintiff has not alleged facts plausibly suggesting the requisite knowledge on the part of Defendants House and Warneck with respect to these claims. Therefore, Plaintiff's cross-motion to amend is denied insofar as it seeks leave to assert Section 1983 claims against Defendants

Warneck and House (in the third, fourth and fifth causes of action of the proposed Amended Complaint).

### 5. Official-Capacity Claims

Defendants argue that the proposed Amended Complaint is futile to the extent that it seeks to add claims against Defendants Warneck, House, and Gilfus in their official capacities. (Dkt. No. 19, at 8.)

Officials in their official capacity are not considered persons subject to liability under Section 1983, although they may be sued in their individual capacity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). It is well settled that an official-capacity suit is, in all respects other than name, a suit against the principal. *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 [1985]). Because TICSD is already named as a party, the Court finds that it would be redundant to allow claims against the individual defendants in their official capacity. Therefore, the amendment to that effect is futile, and Plaintiff's cross-motion to amend is denied with respect to official-capacity claims against Defendants Gilfus, Warneck, and House.

### 6. Sexual Orientation Discrimination

Defendants argue that the proposed amendment adding a sexual orientation discrimination claim under the Equal Protection Clause and Section 1983 (the fourth cause of action in the proposed Amended Complaint) is futile because it fails to state a claim for sexual orientation discrimination. (Dkt. No. 19, at 9.)

To state a claim under the Equal Protection Clause, a plaintiff may either "alleg[e] discrimination based on membership in a protected class," or allege a "class of one" claim. *See*

*Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 140 (2d Cir. 2008). It is clear that Plaintiff is attempting to pursue the former theory of liability with respect to D.B.'s disability, sexual orientation and gender (in the third, fourth, and fifth causes of action in the proposed Amended Complaint); however, she has not actually alleged that D.B. was a member of the protected class. Specifically, Plaintiff does not allege facts plausibly suggesting that D.B. was homosexual. In fact, Plaintiff appears to allege the opposite, as discussed above in Part III.C.2. of this Decision and Order. Because Plaintiff has not shown D.B.'s membership in the protected class at issue, it would be futile to allow the portion of the amendment that adds a claim for sexual orientation discrimination. Plaintiff's cross-motion to amend is denied with respect to the sexual orientation discrimination claim under Section 1983 (in the fourth cause of action of the proposed Amended Complaint).

### 7. Punitive Damages

Defendants argue that the proposed Amended Complaint would be futile to the extent that it requests punitive damages on its new claims. (Dkt. No. 19, at 10.) The Court notes that the proposed Amended Complaint does not differentiate between the municipal and individual Defendants in the "Prayers for Relief" section (Dkt. No. 15, Attach. 2, at 44), and also that Plaintiff is suing the three individual Defendants in their individual capacities (Dkt. No. 15, Attach. 2, at ¶¶ 26-28). Punitive damages are not available in Section 1983 actions against municipalities, unless expressly authorized by statute. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 265-66 (1981). Plaintiff's cross-motion to amend is therefore denied as futile to the extent that it requests punitive damages from TICSD and the Board of Education.

### 8.    Summary of Rejected Portions of the Proposed Amended Complaint

In sum, the Court denies Plaintiff's cross-motion to amend in part, as discussed in the above seven rulings.  More specifically, Plaintiff's cross-motion is denied (and the proposed amendments rejected) with respect to the following: (1) the  New York Civil Rights Law §§ 40-c and 40-d claims (in the seventh and eighth causes of action); (2) the IIED claim which was previously withdrawn (in the tenth cause of action); (3) the sexual orientation discrimination claim (in the fourth cause of action); (4) the inclusion of Defendants House and Warneck in the remaining Section 1983 claims (in the third and fifth causes of action); and (5) all claims against Defendants Gilfus, House, and Warneck in their official capacities.  The cross-motion to amend is otherwise granted, and all remaining proposed amendments are accepted.  The Court shall construe Defendants' remaining arguments to dismiss as they apply to the remaining claims.

### D.    Statutes of Limitations

Defendants move to dismiss the Complaint "to the extent [Plaintiff seeks] recovery upon acts outside the relevant statutes of limitations."  (Dkt. No. 11, Attach. 2, at 7.)  Plaintiff argues that, given the nature of the wrongdoing alleged in this case, the continuing violations doctrine should apply.  (Dkt. No. 15, Attach. 3, at 8.)  The Court notes that Defendants had the opportunity to respond to Plaintiff's argument but chose not to specifically do so.  (*See generally* Dkt. No. 16, at 2-9.)  Under the circumstances, the Court assumes that this aspect of Defendants' motion applies to the claims that survived the Court's analysis above in Part III.C. of this Decision and Order.  After carefully considering the matter, the Court denies this aspect of Defendants' motion for the reasons stated by Plaintiff.  To those reasons, the Court adds the following analysis.

The continuing violation doctrine is a product of Title VII hostile work environment jurisprudence. Under that doctrine, if a plaintiff has experienced a "'continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992) (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir.), *cert. denied*, 474 U.S. 851 [1985]); *see also Ass'n Against Discrimination in Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 274-75 (2d Cir. 1981) (holding consistent pattern of discriminatory hiring practices from 1971 to 1975 to constitute a continuing violation), *cert. denied*, 455 U.S. 988 (1982). "If a continuing violation is shown, a plaintiff is entitled to have a court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996); *see, e.g., Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993) ("Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEO[] charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."), *cert. denied*, 511 U.S. 1052 (1994).

Although the continuing violation doctrine is usually associated with a discriminatory policy, rather than with individual instances of discrimination; and, although acts so "isolated in time . . . from each other . . . [or] from the timely allegations[] as to break the asserted continuum of discrimination" will not suffice, *Quinn v. Green Tree Credit Corp*., 159 F.3d 759, 766 (2d Cir. 1998), a continuing violation may be found "where specific and related instances of

discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994).

The Second Circuit has expanded the doctrine to include claims outside of Title VII. *See Shomo v. City of New York*, 579 F.3d 176, 181-82 (2d Cir. 2009) (concluding that the "continuing violation doctrine" can apply to Eighth Amendment deliberate indifference claims). In particular, the doctrine applies to various iterations of Section 1983 claims that involve discriminatory conduct. *See Washington v. Rockland*, 373 F.3d 310, 317-318 (2d Cir. 2004) (applying continuing violation doctrine to Section 1983 claim involving allegations of employment discrimination based on race); *Connolly v. McCall*, 254 F.3d 36, 40-42 (2d Cir. 2001) (applying continuing violation doctrine to Section 1983 claim involving allegations of discrimination based on plaintiffs' status as "re-employed retirees," in violation of Equal Protection Clause); *Harris v. City of New York*, 186 F.3d 243, 249 (2d Cir. 1999) (applying continuing violation doctrine to Section 1983 claim involving allegations of employment discrimination based on disability); *Jaghory v. New York State Dept. of Educ.*, 131 F.3d 326, 328, 331 (2d Cir. 1997) (applying continuing violation doctrine to Section 1983 claim involving allegations of discrimination in medical licensing based on plaintiff's residency and/or alienage); *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994) (suggesting that continuing violation doctrine might apply to Section 1983 claim involving allegations of employment discrimination based on gender and race). However, courts in this Circuit have been reluctant to apply the doctrine to the IDEA. *See, e.g., Scaggs v. New York State Dep't of Educ.*, 06-CV-0799, 2007 U.S. Dist. LEXIS 35860, 2007 WL 1456221, at *10 (E.D.N.Y. May 16, 2007).

The issue presented to the Court is complicated by the amendment of the Complaint. The proposed Amended Complaint has withdrawn the IDEA claim and added numerous claims under 42 U.S.C. § 1983. (Dkt. No. 15, Attach. 2, at ¶¶ 193-210.) As discussed above in Part III.A. of this Decision and Order, Plaintiff has brought this suit not because of isolated incidents of discrimination, but because of an alleged ongoing pattern of indifference that resulted in her son's death. Given that Plaintiff now asserts Section 1983 claims involving discriminatory conduct, the Court applies the continuing violation doctrine, and denies this aspect of Defendants' motion.

### E.    Negligent Supervision

Defendants move to dismiss Plaintiff's negligent supervision claim on the ground that she has failed to state a claim. (Dkt. No. 11, Attach. 2, at 10.) Generally, Defendants assert two arguments: (1) that the claim fails because D.B. committed suicide at home, and (2) that the emotional harm complained of occurred outside the statute of limitations period. (*Id.*) Plaintiff concedes the merit of the first argument, and does not request relief under this cause of action for D.B.'s suicide, but rather requests relief for emotional distress caused by the harassment itself. (Dkt. No. 15, Attach. 3, at 11.) However, Plaintiff argues that she has alleged the required *prima facie* case for negligent supervision. (*Id.*)

In support of their argument that the alleged emotional distress was caused more than two years before Plaintiff brought suit, Defendants argue that D.B.'s 2012 hospitalization for depression precludes any emotional distress caused thereafter. (Dkt. No. 11, Attach. 2, at 10.) Defendants argue that "Plaintiffs cannot recover for the alleged injuries of D.B.'s 'mental state and depression' because such claim is barred by the statute of limitations–'[a] person's mental well-being can be destroyed only once.'" (*Id.*)

However, the case Defendants cite for this proposition, *Doe v. Allstate Ins. Co.*, concerned the issue of whether homeowner's insurance for general liability covers actions of physical, emotional, psychological, and sexual abuse by the homeowner on his daughter. *Doe v. Allstate Ins. Co.*, 187 A.D.2d 181, 182 (N.Y. App. Div., 4th Dep't 1993). The daughter alleged 28 separate causes of action, and the court determined that the causes of action should have been alleged as a single IIED claim with a single award of damages. *Doe*, 187 A.D.2d at 185. Asking the jury to award separate damages for each act of abuse was inappropriate because "[a] person's mental well-being can be destroyed only once." *Id.*

Again with due respect to Defendants, that case does not discuss suicide, negligent supervision, the liability of schools, hospitalization, or any other of the facts or legal theories that are relevant to this case. In fact, the case confirms that Plaintiff has presented her claim properly: she correctly alleged one combined cause of action for all the acts of abuse that Defendants had knowledge of but chose not to remedy.

"It is well settled that schools are under a duty to adequately supervise the students in their charge and they will be held liable for foreseeable injuries proximately related to the absence of adequate supervision." *Doe ex rel. Doe v. Bd. of Ed, Morris Cent. Sch.*, 9 A.D.3d 588, 589, 780 N.Y.S.2d 198 (N.Y. App. Div., 3d Dept. 2004) (quotation marks and citations omitted). To state a claim for negligent supervision of other students, a plaintiff must allege facts plausibly suggesting that the school failed to exercise the degree of reasonable care that a parent of ordinary prudence would have exercised under comparable circumstances. *Farrukh v. Board of Ed. Of City of NY*, 227 A.D.2d 440, 441, 643 N.Y.S.2d 118 (N.Y. App. Div., 2d Dep't 1996). Proper supervision depends largely on the circumstances attending the event or situation

at hand. Where the underlying injury is caused by the intentional act of a fellow student, the "plaintiff [must] demonstrate, by the school's prior knowledge or notice of the dangerous conduct which caused the injury, that the acts of the fellow student[] could have reasonably been anticipated." *Druba v East Greenbush Cent. Sch. Dist.*, 289 A.D.2d 767, 768, 734 N.Y.S.2d 331 (N.Y. App. Div., 3d Dep't 2001). "The adequacy of the school's supervision and whether the alleged lack thereof was a proximate cause of the underlying injury generally are questions of fact for a jury to resolve." *Doe ex rel. Doe.*, 9 A.D.3d at 590.

Here, the Court finds that Plaintiff has stated a claim for negligent supervision. Taking the facts in the proposed Amended Complaint as true, Defendants knew of the ongoing bullying and failed to remedy that bullying. In particular, Plaintiff alleges that she had a conversation with Defendant Gilfus in which she warned him that D.B. might commit suicide if the bullying did not stop, but that thereafter Defendants failed to punish the bullies. (Dkt. No. 15, Attach. 2, at ¶¶ 43-251.) It may become clear after discovery that there are no issues of material fact in support of this claim, but it is premature to dispose of the claim at this time. As a result, Defendants' motion is denied with regard to Plaintiff's negligent supervision claim.

### F. Negligent Infliction of Emotional Distress

Finally, Defendants move to dismiss Plaintiff's NIED claim as duplicative of her negligent supervision claim, and for reasons similar to those for the dismissal of Plaintiff's negligent supervision claim. (Dkt. No. 16, at 18.) Insofar as this argument mirrors Defendants' argument for the dismissal of Plaintiff's negligent supervision claim, it is rejected for the reasons stated above in Part III.E. of this Decision and Order. Defendants' other argument, that the claim is duplicative, also fails. The elements of a claim for NIED in New York are different

from the elements of a claim of negligent supervision of other students. *Compare Jun chi Guan v. Tuscan Dairy Farms*, 24 A.D.3d 725, 729 (N.Y. App. Div., 2d Dep't 2005) *with Farrukh*, 227 A.D.2d at 441. These two causes may both sound in negligence generally, but they are not so similar as to warrant the dismissal of Plaintiff's NIED claim without any other basis for invalidity. As a result, Defendants' motion is denied as to Plaintiff's NIED claim.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 11) is **<u>DENIED</u>**; and it is further

**ORDERED** that Plaintiff's cross-motion to amend (Dkt. No. 15) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part**, consistent with Part III of this Decision and Order; and it is further

**ORDERED** that, following the parties' motions, the following six claims remain pending in this action:

(1) Plaintiff's claims against TICSD and the Board of Education under Section 504 of the Rehabilitation Act;

(2) Plaintiff's claims against TICSD, Frank House, John P. Warneck, and Joseph Gilfus under Title II of the ADA;

(3) Plaintiff's claims against TICSD, the Board of Education, and Joseph Gilfus under 42 U.S.C. § 1983 and the Fourteenth Amendment for discrimination involving D.B.'s disability and D.B.'s failure to conform to gender stereotypes;

(4) Plaintiff's claims against TICSD and the Board of Education under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et. seq.*, for discrimination involving D.B.'s failure to conform to gender stereotypes;

(5) Plaintiff's claims against TICSD and the Board of education for negligent supervision; and

(6) Plaintiff's claims against TICSD, the Board of Education, Frank House, John P. Warneck, and Joseph Gilfus for negligent infliction of emotional distress; and it is further

**ORDERED** that Plaintiff shall, within **SEVEN (7) DAYS** from the date of filing of this Order, file and serve a signed copy of her Amended Complaint, **revised so as to be consistent with this Decision and Order**; and it is further

**ORDERED** that Defendants shall file an answer to Plaintiff's revised Amended Complaint within **FOURTEEN (14) DAYS** from the date that Plaintiff files her revised Amended Complaint, in accordance with Fed. R. Civ. P. Rule 12(a)(4)(A); and it is further

**ORDERED** that this case is referred back to Magistrate Judge Baxter for a Rule 16 conference and the setting of pretrial scheduling deadlines.

Dated: March 14, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge